UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN L. WESLEY, | ) |
| | ) |
| Plaintiff, | ) No. 4:18-CV-1587 RLW |
| | ) |
| v. | ) |
| | ) |
| LOUIS DEJOY, Postmaster General, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's Motion for Summary Judgment (ECF No. 17).[1] This matter is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff John Wesley ("Wesley") was a letter carrier at the Florissant, Missouri Post Office until May 2015. (Defendant's Statement of Material Facts, ECF No. 19, ("DSMF", ¶1)).[2] On January 8, 2015, Wesley submitted a request for reassignment to the Kansas City area. (DSMF, ¶3). On January 18, 2015, Wesley submitted another transfer request to the Lee's Summit, Missouri area. (DSMF, ¶4). On February 17, 2015, Wesley moved to Kansas City, Missouri.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Postmaster General Louis DeJoy, who assumed the role effective June 16, 2020, is substituted for the previous Postmaster General, Megan Brennan.

[2] E.D. Mo. L.R. 4.01 provides, "[a]ll matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." Therefore, the Court deems Defendant's Statement of Material Facts as deemed admitted because they have not been properly controverted by Wesley. *See Northwest Bank and Trust Co. v. First Illinois Nat'l Bank*, 354 F.3d 721, 724-725 (8th Cir. 2003) (affirming district court that deemed admitted all statements of fact by party moving for summary judgment where non-movant failed to abide by local rule); *O'Mara v. Scales Plumbing Co., LLC*, No. 4:18-CV-00096-SNLJ, 2018 WL 6248752, at *1 (E.D. Mo. Nov. 29, 2018).

(DSMF, ¶6). Wesley took two weeks of scheduled annual leave from the Florissant Post Office from February 11, 2015 through February 26, 2015. (DSMF, ¶7). On February 18, 2015, Bianca Hines, the eReassign Coordinator for the Post Office, called Wesley and told him that two other individuals were ahead of him for the position in Kansas City and no position was available for him at that time and location. (DSMF, ¶9). On February 26, 2015, Hines sent Wesley a letter stating that his transfer request to Kansas City was being denied due to unacceptable attendance. (DSMF, ¶10). On March 5, 2015, Wesley submitted a reassignment request to the Postal Service for a job in Independence, Missouri. (DSMF, ¶8). On March 6, 2015, Wesley requested a leave extension with the Florissant Post Office, indicating that he had moved to Kansas City. (DSMF, ¶11). Wesley's request for a leave extension was granted. (*Id.*) On April 22, 2015, the Postal Service denied Wesley's request to transfer to Independence, Missouri, based upon his unacceptable attendance records. (DSMF, ¶12). Wesley sent a resignation letter to the Postal Service, requesting separation effective on May 6, 2015, because he had established residency in Kansas City. (DSMF, ¶13).

On April 27, 2015, Wesley requested an appointment with a Dispute Resolution Specialist pursuant to the Postal Service's Information for Pre-Complaint Counseling. (DSMF, ¶14). The Postal Service responded on July 24, 2015, finding that no resolution to Wesley's counseling request based on the information provided by Hines.

On August 3, 2015, Wesley filed a formal EEO complaint against the Postal Service. (DSMF, ¶16). On the EEO form, Wesley indicated that the discrimination occurred in Florissant, Missouri and Kansas City, Missouri. Wesley described the discriminatory conduct:

> I submitted a request for E-reassignment on 01-08-15. The request was denied due to unacceptable attendance (AWOL). AWOL issue was settled as part of a previous EEO complaint (4J-630-0051-14).

In Box 14 on the form, Wesley checked the box indicating "Retaliation (Specify Prior EEO Activity)." (*Id.*) He did not check the box indicating discrimination based upon "Disability (Specify)". (*Id.*) Wesley indicated that the alleged discriminatory acts occurred on 2/06/2015 and 2/26/2015. (*Id.*) Wesley indicated he had veterans' preference eligibility. (*Id.*)

On August 21, 2015, the Postal Service dismissed Wesley's retaliation claim regarding his Kansas City Transfer because it was untimely under 29 C.F.R. §1614.107(a)(2). (DSMF, ¶17).

On February 11, 2017, Wesley applied for a laborer custodial position with the Postal Service. (DSMF, ¶20). On March 20, 2017, Wesley subsequently filed a complaint with the U.S. Department of Labor, Veterans' Employment and Training Service, in which he alleged that the Postal Service violated his veterans' preference rights under the Veterans Employment Opportunities Act of 1998 ("VEOA"). (DSMF, ¶21).

On April 10, 2017, the U.S. Department of Labor informed Wesley that it had completed its investigation and determined that the Postal Service did not violate his veterans' preference rights. (DSMF, ¶22). On April 16, 2017, Wesley filed an appeal to the Merit Systems Protection Board ("MSPB"). (DSMF, ¶23).

On May 22, 2017, the Postal Service issued its final decision regarding Wesley's claim regarding its denial of his request to transfer to Independence, Missouri. (DSMF, ¶18). The Postal Service concluded that Wesley failed to make a prima facie case of discrimination and management had proffered a non-pretextual, non-discriminatory reason for denying his request to transfer to Independence, Missouri. (DSMF, ¶18).

On June 18, 2017, Wesley filed an appeal with the Equal Employment Opportunity Commission's Office of Federal Operations in Washington, D.C. ("EEOC-OFO") regarding case number 4E-640-0084-15. (DSMF, ¶19).

On July 12, 2017, Wesley signed a settlement agreement with the Postal Service for his appeal before the MSPB. (DSMF, ¶24). In the settlement agreement, Wesley agreed to the following:

> I, John L. Wesley, have read and understand the terms, conditions and restrictions set forth in the above Settlement Agreement and Release. I am mentally and physically fit so as to be able to understand this Settlement Agreement and Release in its entirety. I freely sign this Settlement Agreement and Release without reservation, threat, duress, coercion, or intimidation on the party of anyone. I expressly agree to abide by the terms of this Settlement Agreement and Release.

(DSMF, ¶24). The Settlement Agreement further provided:

> For the purposes of obtaining the full and final resolution and settlement of any and all litigation, claims, complaints, grievances, appeals, proceedings or causes of action of any kind in any forum that [Wesley] . . . had, has or may have, known or unknown, against the Postmaster General, the USPS . . . up to and including the effective date of this Agreement, including all claims relating to any aspect of [Wesley's] employment with the USPS.

(DSMF, ¶27).

## DISCUSSION

### I.     MOTION FOR SUMMARY JUDGMENT

**A. Standard of Review**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly

preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute."  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248.  The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331.  The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

**B. Discussion**

**1. July 12, 2017 Settlement Agreement Bars Wesley's Complaint**

"A district court possesses the inherent power to enforce a settlement agreement where the terms are unambiguous." *Davison v. Bay Area Credit Serv., LLC*, No. 12-03411-CV-S-DGK, 2013 WL 627003, at *1 (W.D. Mo. Feb. 20, 2013) (citing *Barry v. Barry,* 172 F.3d 1011, 1013 (8th Cir.1999)).  It is well established that settlement agreements are governed by principles of contract law. *MLF Realty L.P. v. Rochester Ass'n,* 92 F.3d 752, 756 (8th Cir. 1996).  "The essential elements of a valid settlement agreement are the involvement of parties who are competent to contract, a

proper subject matter, legal consideration, mutuality of obligation, and mutuality of agreement." *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006) (citing *L.B. v. State Comm. of Psychologists,* 912 S.W.2d 611, 617 (Mo. Ct. App. 1995)). "Courts are bound to enforce a contract as written if the terms of the contract are clear, plain and unequivocal." *Kells v. Missouri Mountain Properties, Inc.*, 247 S.W.3d 79, 85 (Mo. Ct. App. 2008) (citing *Malan Realty Investors, Inc. v. Harris,* 953 S.W.2d 624, 626–27 (Mo. banc 1997)). Here, there is no dispute that the Settlement Agreement is enforceable. The only issue before the Court is whether the scope of the Settlement Agreement includes Wesley's claims alleged in this lawsuit.

As stated, Wesley signed a July 12, 2017 Settlement Agreement that purported to resolve any of his claims against the Postmaster or the USPS related to his employment. (DSMF, ¶27). Wesley argues that the July 12, 2017 Settlement Agreement does not bar this action because the Settlement Agreement only applied to the appeal he had before the MSPB (docketed at number CH-3330-17-315-I-1). (ECF No. 21 at 1 and ECF No. 21-1 at 7). The express language of the July 12, 2017 Settlement Agreement, however, conflicts with Wesley's interpretation that the Settlement Agreement does not impact this case. The language of the Settlement Agreement clearly extends beyond his MSPB appeal. Wesley entered into the Settlement Agreement to obtain "full and final resolution of any and all litigation, claims, complaints, grievances, appeals, proceedings or causes of action of any kind in any forum that [Wesley] . . . had, has or may have, known or unknown, against the Postmaster General, the USPS . . . up to and including the date of his Agreement, including all claims relating to any aspect of [Wesley's] employment with USPS." (DSMF, ¶27). The language of the Settlement Agreement is broadly written to include "any and all" claims that he had or has, whether he was aware of them at the time of the Settlement Agreement. *See Worthy v. McKesson Corp.*, 756 F.2d 1370, 1371 (8th Cir. 1985) (plaintiff's claim

for wrongful termination was precluded by his settlement agreement barring "all claims"). The Settlement Agreement provides that it "includes, but is not limited to, such litigation, claims, complaints, appeals, grievances, proceedings or causes of action regarding and/or relating to the current appeal from the Merit System Protection Board, MSPB Docket No. CH-3330-17-0315-I-1." (DSMF, ¶ 28). The Settlement Agreement's use of the phrase "but not limited to" clearly demonstrates that the agreement was intended to be interpreted broadly, without limitation to the single MSPB appeal. Indeed, the broad breadth of the Settlement Agreement is reflected by the requirement that Wesley voluntarily withdraw, "with prejudice, . . . MSPB Docket No. CH-3330-176-0315-I-1" and to "withdraw with prejudice any other actions he has pending in any forum against the USPS." (DSMF, ¶29). The second requirement belies Wesley's claim that the Settlement Agreement was limited to the MSPB appeal.

Finally, in Paragraph 2(b) of the Settlement Agreement, Wesley agreed to waive "any and all litigation, claims, complaints, appeals, grievances, proceedings or cause of action of any kind in any forum" against the Postal Service and to "forever release" the posable service " from all liability for . . . any cause of action which may have arisen . . . as of the date all parties have signed this Agreement." (DSMF, ¶29). The term "any cause of action" was further defined to include, among other things, discrimination claims "based on . . . the Rehabilitation Act of 1973." (DSMF, ¶29). Thus, the broad language of Paragraph 2(b), particularly the "any cause of action" and "any and all litigation" demonstrate that the Settlement Agreement was not limited to the MSPB Appeal. Wesley's claim before the MSPB was not based on the Rehabilitation Act so the parties clearly contemplated the Settlement Agreement precluding other actions Wesley had or may have had against the Postal Service.

Therefore, the Court finds that Wesley's claims are barred by the Settlement Agreement. The Court grants Defendant's Motion for Summary Judgment on this ground.

### 2. Wesley failed to Exhaust his Claim regarding Kansas City Transfer and Disability Claim

#### a. Claim regarding Kansas City Transfer Untimely

Federal employees who wish to bring a lawsuit against the United States for employment discrimination must exhaust available administrative remedies. *See Bailey v. United States Postal Serv.*, 208 F.3d 652, 654 (8th Cir. 2000); *Nygren v. Ashcroft*, 109 F. App'x 816, 819 (8th Cir. 2004). One of the exhaustion requirements is that the employee initiate contact with an EEO counselor within forty-five days of the alleged discrimination to attempt an informal resolution *See* 29 C.F.R. §1614.105(a)(1) ("An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."); *Nygren*, 109 F. App'x at 819.

Wesley argues that he timely exhausted his claim regarding the Postal Service's denial of his Kansas City transfer request because the final decision for that denial occurred on May 13, 2015. (ECF No. 21 at 1). Wesley's documents attached to his response to Defendant's Motion for Summary Judgment do not support this assertion. A letter dated May 13, 2015 from Bianca Hines, Staffing Specialist with the Postal Service, indicates that Wesley was being considered for reassignment to Lee's Summit, Missouri, but does not mention Kansas City. (ECF No. 21-2 at 3, 5). Similarly, Hines' email to Wesley on May 13, 2015 is entitled "eReassign-J Wesley-Lees Summit, MO City Carrier" and seems to be unrelated to Wesley's Kansas City, Missouri transfer application. (ECF No. 21-2 at 2). Finally, the eReassign email from May 13, 2015 acknowledges the receipt of Wesley's reassignment request to Lee's Summit, but does not mention Kansas City, Missouri. (ECF No. 21-2 at 5).

In addition, Wesley's other materials discredit his assertion that he exhausted his administrative remedies with respect to his transfer request to Kansas City, Missouri. Wesley attached a letter dated February 26, 2015 from Bianca Hines, which denied his request to transfer to Kansas City, Missouri. (ECF No. 21-2 at 8). Wesley also completed a sworn affidavit wherein he stated that he learned about the denial of his Kansas City transfer on February 18, 2015. (DSMF, ¶9). Wesley's knowledge that there was no position in Kansas City is also reflected in his March 6, 2015 letter to the Postmaster in Florissant, wherein he requested a leave of absence "[d]ue to circumstances extenuating from a recent e-reassign request, and the lack of position vacancies in the Mid-America District." (DSMF, ¶11).

The undisputed record demonstrates Wesley's timeline is incorrect. Wesley's Kansas City transfer request was denied on February 26, 2015. (DSMF, ¶10). Based upon the date of the transfer request denial, Wesley had until April 13, 2015 to begin the administrative process under the EEO regulations. *See* 29 C.F.R. §1614.105(a)(1). Wesley, however, did not begin the administrative process by requesting an appointment with a Dispute Resolution Specialist on April 27, 2015, which was fourteen days after the April 13, 2015 deadline. (DSMF, ¶14). The Court dismisses Wesley's claims based upon his request to transfer to Kansas City because he failed to timely exhaust his administrative remedies in compliance with Section 1614.105(a)(1).

Finally, the Court notes that Wesley had previously filed four other EEO claims against the Postal Service prior to 2015. (DSMF, ¶2). Wesley's numerous prior EEO claims demonstrate that he was "well aware of the general requirement for filing a timely EEO charge." *Betz v. Chertoff*, 578 F.3d 929, 937 (8th Cir. 2009). Consequently, the Court finds no basis for excusing Wesley's noncompliance with Section 1614.105(a)(1).

### b. Disability Discrimination Claim Not Exhausted

Wesley also alleges a disability discrimination claim under the Rehabilitation Act regarding his request for a transfer to Kansas City, Missouri. Defendant contends that Wesley did not exhaust his administrative remedies, as required to bring a disability claim under the Rehabilitation Act. *Morgan v. U.S. Postal Serv.*, 798 F.2d 1162, 1165 (8th Cir. 1986) ("An exhaustion requirement for claims of handicap discrimination in employment against the federal government is reasonable from a practical viewpoint."). Failure to exhaust administrative remedies forecloses the right to a decision on the merits. *McAlister v. Sec'y of Dep't of Health & Human Servs.*, 900 F.2d 157, 158 (8th Cir. 1990)

Here, Wesley filed his EEO complaint against the Postal Service on August 3, 2015. (DSMF, ¶16). Wesley stated, "The request [to transfer] was denied due to unacceptable attendance (AWOL). AWOL issue was settled as part of a previous EEO complaint (4J-630-0051-14)." (DSMF, ¶16). In the EEO Complaint in Box 14 of his EEO charge, Wesley only checked the box for "Retaliation (Specify Prior EEO Activity)" and did not check the "Disability (Specify)" indicator. (DSMF, ¶16). Wesley's failure to check the box for disability is fatal to his disability claim because he did not exhaust his administrative remedies. *See Russell v. TG Missouri Corp.*, 340 F.3d 735, 748 (8th Cir. 2003) (holding plaintiff failed to exhaust her administrative remedies for purposes of her retaliation claim when she checked the box for a claim of disability discrimination).

Moreover, Wesley's purported disability claim is not 'like or reasonably related" to his retaliation claim, which was properly exhausted as part of the EEO charge. *See Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994) ("A plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like

or reasonably related to the substance of charges timely brought before the EEOC."); *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 631 (8th Cir. 2000) (same). Wesley has not demonstrated that his disability claim was referenced in his retaliation claim which was before the EEO. Rather, Wesley's omission of his disability claim would have altered "the scope of the initial administrative charges". *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986). Therefore, the Court holds that Wesley's disability claim was not exhausted and grants summary judgment in favor of Defendant on Wesley's disability discrimination cause of action.

### 3. Wesley did not Exhaust his Veterans' Preference Claim

Before a VEOA claim reaches a United States District Court, a plaintiff must follow several procedural steps. Under the VEOA, an aggrieved party "may file a complaint with the Secretary of Labor" and this must be done "within 60 days after the alleged violation." 5 U.S.C. § 3330a(a)(1)(A); 5 U.S.C. § 3330a(a)(2)(A). After the Secretary of Labor has investigated of the complaint and is unable to resolve the complaint within 60 days, claimant may then elect to appeal to the MSPB. *Id.* § 3330a(d). If claimant has completed these and other procedural steps and more than 120 days have passed from the date of appeal to the MSPB, claimant may elect to "terminate those administrative proceedings and file an action with the appropriate United States district court not later than 60 days after the date of the election." 5 U.S.C. § 3330b(a). The failure to exhaust these remedial mechanisms warrants dismissal of s plaintiff's claims. *Figueroa v. Napolitano*, 772 F. Supp. 2d 741, 749 (D.S.C. 2010).

Here, Wesley brought a claim before the Secretary of Labor and the MSPB for a veterans' preference violation, but that was a different claim involving a position as a laborer custodian in 2017. (DSMF, ¶¶20-23). There is no evidence that Wesley followed the appropriate remedial process for under the VEOA regarding his transfer request to Kansas City in 2015. The Court

cannot ignore the statutory scheme established by the VEOA, and thus does not have jurisdiction over Plaintiff's alleged veterans' preference claim regarding his transfer request to Kansas City to 2015. *Figueroa*, 772 F. Supp. 2d at 749. The Court grants summary judgment to Defendant on Wesley's veterans' preference claim.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 17) is **GRANTED**.

An appropriate Judgment is filed herewith.

Dated this 15th day of September, 2020.

                                                         _____
                                                         **RONNIE L. WHITE**
                                                         **UNITED STATES DISTRICT JUDGE**